### UNITED STATES et al. v. RUIZ.

#### (Circuit Court of Appeals, Fifth Circuit.   March 11, 1913.)

#### No. 2,254.

1. HABEAS CORPUS (§ 92*)—DEPORTATION PROCEEDINGS—CONCLUSIVENESS.

One seeking to enter the United States is entitled to a fair, though summary, hearing before the immigration officers, and, this having been accorded him, the determination of the Commissioner of Immigration, or the Secretary of Commerce and Labor on appeal, against his right to enter, is conclusive, though erroneous; but, if a fair hearing is denied the immigrant, he may obtain release on habeas corpus, on proving that he does not belong to one of the excluded classes, either by the same evidence as was introduced before the immigration officers, or by new and additional proof.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

2. HABEAS CORPUS (§ 85*)—RIGHT TO ENTER—HEARING BEFORE IMMIGRATION OFFICERS—FAIR TRIAL.

An alien, seeking to enter the United States, was assaulted by arresting officers, and, without being allowed to procure counsel, was taken before an immigration inspector, while still under the influence of the intimidation caused by the assault, and examined concerning his right to enter. He was unable to speak or read English, and the inspector acted as both prosecutor and interpreter. *Held*, that such facts sufficiently tended to show that he was not accorded a fair hearing before the immigration officers, to entitle him to a hearing on habeas corpus on the merits of his right to enter the United States.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. § 85.*]

3. HABEAS CORPUS (§ 90*)—HEARING—SCOPE—ESTOPPEL.

Where the government's return to a writ of habeas corpus to review the right of an alien to enter the United States asserted want of jurisdiction to hear the matter anew, because of the conclusiveness of the findings of the executive officers, but on the hearing the government offered oral evidence in support of its own contentions, and treated the hearing as one de novo, it thereby waived its right to object to a determination of the merits.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80; Dec. Dig. § 90.*]

4. HABEAS CORPUS (§ 29*)—EXCLUDED CLASSES—DEPORTATION.

Where an alien, held for deportation, was a native of Spain, but a naturalized citizen of the Republic of Panama, from whence he came to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the United States, a deportation warrant providing for his return to Spain was illegal, and insufficient to justify his detention on habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 24; Dec. Dig. § 29.*]

5. HABEAS CORPUS (§ 117*)—DETENTION—ILLEGAL WARRANT—DISCHARGE—EFFECT.

An order, entered on habeas corpus, discharging an alien, who was not entitled to enter the United States, because the warrant under which he was held provided for his return to the wrong country, was not conclusive against the government's right to prosecute further proceedings against him for his deportation to the country from whence he came.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 119, 120; Dec. Dig. § 117.*]

Appeal from Circuit Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Habeas corpus by the United States, on relation of Alfred Ruiz, to procure relator's discharge from the custody of the United States Commissioner of Immigration at the port of New Orleans. From an order discharging relator on his own recognizance, the government appeals. Affirmed.

L. H. Burns, Asst. U. S. Atty., of New Orleans, La. (Charlton R. Beattie, U. S. Atty., of New Orleans, La., on the brief), for appellants.

J. A. Morales and H. J. Rhodes, both of New Orleans, La., for appellee.

Before SHELBY, Circuit Judge, and NEWMAN and GRUBB, District Judges.

GRUBB, District Judge. This is an appeal by the United States from an order of the District Court making absolute a writ of habeas corpus applied for by the relator, who sought to be released from the custody of the Commissioner of Immigration at New Orleans, by whom he was held under a warrant issued by the Secretary of Commerce and Labor for his deportation to Spain, upon the ground that he was an alien of one of the excluded classes, having introduced into this country a woman for the purpose of prostitution.

[1] The question which presents itself at the outset is that relating to the jurisdiction of the District Court in habeas corpus proceedings to release one detained for the purpose of deportation under the immigration laws. The law is well settled that one seeking to enter the United States is entitled to a fair hearing as to his right to do so before the executive officers, though the hearing may be a summary one; that, having had such a hearing, the decision of the Commissioner of Immigration, or of the Secretary of Commerce and Labor on appeal, against his right to enter, is due process of law, and is conclusive upon the immigrant, even though wrong. If a fair, though summary, hearing has been denied the immigrant, the District Court has jurisdiction to hear the matter, upon the merits, upon habeas corpus, and release the immigrant, if it be shown on the hearing before it, even by evidence not offered on the hearing before the executive officers, that he does not belong to any one of the excluded classes. As a

preliminary to entering upon a trial of the merits, the District Court must first determine that the immigrant was denied a fair hearing before the Commissioner of Immigration, or before the Secretary upon appeal to him from the Commissioner. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369.

[2] The first inquiry is, therefore: Was the relator denied a fair hearing before the executive officers? The hearing before the Commissioner of Immigration and the Secretary in this case was based on the examination of the relator before one Tresavuk, an inspector of the Bureau of Immigration. If the method of examination of the immigrant by the inspector was unfair, then the hearing before the Commissioner and Secretary were also unfair, since they were based upon that examination. The alleged unfairness of the examination of the relator is based upon the fact that it was taken immediately after an assault was committed upon him by the arresting officers, and in the presence of the immigration inspector, and while he was still, in a sense, under the influence of the intimidation caused by it; that he was not allowed counsel until after his examination was completed; that, being unable to speak or read English, an interpreter was necessary in the conduct of the examination, and that the inspector of immigration acted as the interpreter, as well as the prosecutor; and that certain documentary evidence which the relator offered in his own behalf on the examination, consisting of letters and a return trip railroad ticket to San Antonio, Tex., found on his person when arrested, was not transmitted with the record in the case to the Secretary for consideration by him upon the appeal. We incline to the view that there is enough shown in the record to cast sufficient doubt upon the fairness of the examination of the relator, conducted by the inspector, to justify the District Court in hearing the application upon the merits, and upon evidence other than that introduced on the hearing before the executive officers.

[3] There is an additional reason in support of the decision of the District Court making the writ absolute upon the strength of the evidence other than that which was before the Secretary. It is that both parties, upon the hearing in the District Court, treated the matter as being heard upon the merits and de novo; the government not only not objecting to the oral evidence offered by the relator upon this ground, but offering oral evidence in support of its contentions, as well. This was tantamount to a request that the District Judge decide the matter upon the new evidence submitted, without first determining the question as to whether the relator had been accorded a fair hearing before the executive officers of the government. It is true the return of the government to the writ asserts the want of jurisdiction in the District Court to hear the matter anew, because of the conclusiveness of the findings of the executive officers; but upon the hearing the government abandoned this position, and treated the hearing as one de novo, on which the merits, as deduced from the evidence then offered by the parties, were to govern the court's decision. Having by this course of conduct induced the court below to decide the application on the mer-

its in the first instance, it does not now lie in the mouth of the government to complain of the court's action in doing what it was so invited to do. We therefore sustain the action of the District Court in entering upon a hearing de novo and deciding the case upon the merits upon the evidence adduced on the hearing of the habeas corpus proceeding.

Did the evidence adduced in the court below justify the release of the relator? The District Judge concurred in the conclusion reached by the officers of the Department of Commerce and Labor that the evidence on the hearing of the writ was sufficient to show that the relator belonged to one of the classes excluded from entrance under the immigration laws, and we agree with his conclusion and that of the Department. The District Judge, however, held that the immigration laws contemplated the deportation of an alien who had illegally entered the country to the country whence he came when he illegally entered the country, regardless of the country of his nativity, and released the relator, because the warrant of deportation ordered him returned to Spain, the country found by the Department to be that of his nativity and citizenship, instead of to Panama, from which country he came to the United States after having been domiciled there for a period of many years. United States v. Redfern (C. C.) 186 Fed. 603–604. The Circuit Court of Appeals for the Sixth Circuit, in the case of Frick v. Lewis, 195 Fed. 693–701, 115 C. C. A. 493, held the contrary, and construed the words of the immigration law, "returned to the country whence he came," to refer to the country of the alien's nativity or citizenship.

[4] We find it unnecessary in the present case to pass upon the question whether permanent domicile, as well as nativity or citizenship, determines the country from which the alien came, since the relator, in his evidence on the hearing of the writ, testified that he was a citizen of the Republic of Panama, having sworn allegiance to that country. It is true that upon his examination before the inspector of immigration he is reported to have testified that he was a native and subject of Spain; but the circumstances under which that examination was held and the liability of error therein through the necessity of interpretation, especially as the interpreter and the inspector were the same person, lead us to adopt the evidence of the relator on the hearing of the writ. The government objected to this evidence upon the hearing of the writ, but only because it contended that no such ground for the issuance of the writ was presented in the petition, and not because it contended that the finding of citizenship by the Department was conclusive upon the court.

If the relator was a citizen of Panama at the time of his illegal entry into this country, and came from Panama to this country, the warrant of deportation should have directed that he be returned to Panama, instead of to Spain. Detention under a warrant directing the relator's deportation to a country to which the government had no right to cause him to be deported is an illegal detention and restraint of his liberty, against which a writ of habeas corpus is an available remedy. Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup.

Ct. 201, 52 L. Ed. 369. As the relator has not shown a right to remain in this country, but only a right to complain of the place to which he is ordered to be deported, it may be that his release under the writ should not be unconditional, but should provide for his further detention for a reasonable length of time to enable the Department to take the necessary steps for his rearrest upon a proper warrant of deportation.

[5] This we understand to be the meaning of the decision of the Supreme Court in the case last cited, rather than, as was held by the District Court for the Southern District of New York, in the case of United States v. Williams, 187 Fed. 470, 471, that the writ of habeas corpus would not lie to release an alien not shown to have been entitled to remain in this country, but who was about to be deported to the wrong country.

In view of the fact that the record shows that the relator has already been released upon his own recognizance, all that seems necessary to the proper protection of the' rights of the government in this case is that the order of the District Court making the writ absolute should be modified, so as to provide that such order should be without prejudice to the right of the government to institute and prosecute further proceedings looking to the deportation of the relator to the Republic of Panama, if it should be so advised, and that, as so modified, the order of the District Court be affirmed.